FEB23'04 PM 3:55 USB

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

CHAPTER 7

IN RE: Yury Shkolnikov
        Debtor

Case No. 03-16727 (Judge Hillman)
Adversary Proceeding:03-01478

Mikhail Elkin
Boris Elkin
Elina Levinson as administratrix of the Estate of Sonya Elkin
Anna Kutikov
Gennady Kutikov
Anna Kutikov as administratrix of the Estate of Marat Kutikov
Sergey Rabovsky
Boris Rabovsky
Igor Rabovsky
Sergey Rabovsky as administrator of the Estate of Alla Rabovsky
Luba Levin
Michael Rabinovich
Luba Levin and Michael Rabinovich as administrators of the estate of Mariya Vilner
Luba Levin and Michael Rabinovich as administrators of the estate of Vitaly Rabinovich
Michael Pevtsov
Alek Pevtsov
Alek and Michael Pevtsov as representatives and successors of Zyama Pevtsov
Alek and Michael Pevtsov as representatives and successors of Tsilya Pevtsov

                                                    Plaintiffs-
Creditors

v.

Yury Shkolnikov, Defendant-Debtor


Motion for Revision, Amendment, Revocation, Reconsideration or Otherwise of Sua
Sponte Dismissal

        The dismissal probably as a matter of law is without prejudice, but the docket is

silent and FRCP 41 has some broad language. The dismissal should be without

prejudice. No adverse party ever served an answer or a motion for summary judgment

filed. In fact, no adverse party has objected or does object. There was no hearing noticed

on the dismissal. The Plaintiffs' counsel is not experienced in bankruptcy, and could not

029318

39

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

CHAPTER 7

IN RE: Yury Shkolnikov
    Debtor

Case No. 03-16727 (Judge Hillman)
Adversary Proceeding:03-01478

Mikhail Elkin
Boris Elkin
Elina Levinson as administratrix of the Estate of Senya Elkin
Anna Kutikov
Gennady Kutikov
Anna Kutikov as administratrix of the Estate of Marat Kutikov
Sergey Rabovsky
Boris Rabovsky
Igor Rabovsky
Sergey Rabovsky as administrator of the Estate of Alla Rabovsky
Luba Levin
Michael Rabinovich
Luba Levin and Michael Rabinovich as administrators of the estate of Mariya Vilner
Luba Levin and Michael Rabinovich as administrators of the estate of Vitaly Rabinovich
Michael Pevtsov
Alek Pevtsov
Alek and Michael Pevtsov as representatives and successors of Zyama Pevtsov
Alek and Michael Pevtsov as representatives and successors of Tsilya Pevtsov
                                       Plaintiffs-

Creditors

v.
Yury Shkolnikov, Defendant-Debtor

Notice of Appeal to United States District Court

      The Plaintiffs herein file notice of appeal of any and all issues that may be appealed, including but not limited to
    1)  the denial of the motion for default judgment,
    2)  the dismissal of the complaint,
    3)  the denial of the motion for Revision, Amendment, Revocation, Reconsideration or Otherwise of Sua Sponte Dismissal

      The Plaintiffs elect to appeal to the United States District Court.

Plaintiffs by their attorney,

40

Boston, MA 02109-4002
Tel: 617 227-2380  Fax: 617 367-8840
e-mail: :repia4133@aol.com


Certificate of service: I certify that on 3-28-04 a copy of this Notice of Appeal was
mailed postage prepaid to each of the following:
Mark G. DeGiacomo, Trustee
Roche, Carens & DeGiacomo
99 High Street
Boston, MA 02110


And
Richard M. Canzano
36 Commerce Way
Woburn, MA 01801

41

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

CHAPTER 7

IN RE: Yury Shkolnikov
      Debtor

Case No. 03-16727 (Judge Hillman)
Adversary Proceeding:03-01478

Mikhail Elkin
Boris Elkin
Elina Levinson as administratrix of the Estate of Senya Elkin
Anna Kutikov
Gennady Kutikov
Anna Kutikov as administratrix of the Estate of Marat Kutikov
Sergey Rabovsky
Boris Rabovsky
Igor Rabovsky
Sergey Rabovsky as administrator of the Estate of Alla Rabovsky
Luba Levin
Michael Rabinovich
Luba Levin and Michael Rabinovich as administrators of the estate of Mariya Vilner
Luba Levin and Michael Rabinovich as administrators of the estate of Vitaly Rabinovich
Michael Pevtsov
Alek Pevtsov
Alek and Michael Pevtsov as representatives and successors of Zyama Pevtsov
Alek and Michael Pevtsov as representatives and successors of Tsilya Pevtsov

                                                     Plaintiffs-

Creditors

v.
Yury Shkolnikov, Defendant-Debtor

Designation of Record on Appeal

       The Record on Appeal shall consists of a copy of the Docket, and a copy of each substantive entry on the Docket Sheet (i.e. all entries except Court Certificates of mailing).

Plaintiffs by their attorney,


Marc S. Alpert, BBO # 016420
Marc S. Alpert, P.C.

42

50 Congress St., suite 225
Boston, MA 02109-4002
Tel: 617 227-2380  Fax: 617 367-8840
e-mail: repta4133@aol.com

Certificate of service: I certify that on 3-28-04 a copy of this Notice of Appeal was
mailed postage prepaid to each of the following:
Mark G. DeGiacomo, Trustee
Roche, Carens & DeGiacomo
99 High Street
Boston, MA 02110

And
Richard M. Canzano
36 Commerce Way
Woburn, MA 01801

43

Source: Legal > Area of Law - By Topic > Bankruptcy > Cases and Court Rules > US Courts Bankruptcy Cases Terms:
bad faith claim as asset of estate (Edit Search)
        Select for FOCUS™ or Delivery
    fed c g

*135 F.3d 1206, \*; 1998 U.S. App. LEXIS 1767, \*\*;
Bankr. L. Rep. (CCH) P77,623; 32 Bankr. Ct. Dec. 126*

In the Matter of New Era, Inc., Debtor. Appeals of New Era, Inc. and Phoenix Insurance
Company.

Nos. 96-2036, 96-2854

UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

135 F.3d 1206; 1998 U.S. App. LEXIS 1767; Bankr. L. Rep. (CCH) P77,623; 32 Bankr. Ct.
Dec. 126

November 7, 1997, Argued
February 9, 1998, Decided

**PRIOR HISTORY: [\*\*1]** Appeals from the United States District Court for the Southern District of
Illinois. Nos. 94-CV-0893-PER & 95-CV-0467-PER. Paul E. Riley, Sr., Judge.

**DISPOSITION:** New Era's appeal is dismissed, and the order that Phoenix has appealed from is
affirmed.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Appellants challenged a judgment of the United States District
Court for the Southern District of Illinois, which affirmed a bankruptcy court decision denying
appellant insurance company's motion for leave to intervene, and denying appellant debtor's
motion to enforce the automatic stay.

**OVERVIEW:** Appellant insurance company sought to intervene in a settlement between appellant
debtor and some of its creditors under Fed. R. Bankr. P. 2018(a), arguing that it would be harmed if
creditors were awarded a judgment in excess of appellant debtor's insurance coverage. The court
found that appellant insurance company had no protectable legal interest with which to establish good
cause to intervene, and that it was not aggrieved by the order denying intervention, because the
**bad faith claim** against it would be prosecuted whether or not the settlement stood. The court also
found no extraordinary circumstances that warranted directing the bankruptcy court to revisit its
order lifting the automatic stay, and that the attorney arguing the motion on behalf of appellant
debtor had no right to do so without the trustee's consent.

**OUTCOME:** The court dismissed appellant debtor's appeal, holding that the attorney making the
appeal had no right to appear on appellant debtor's behalf, and affirmed the denial of appellant
insurance company's motion for leave to intervene, holding that it had no legally protectable interest
with which to establish good cause.

**CORE TERMS:** settlement, insured, bad-faith, intervene, assigned, automatic stay, insurer, hired,
frivolous, policy limit, unethical conduct, sanctioned, trustee in bankruptcy, insurance coverage,
purportedly, lifting, handle, oppose, frivolous appeal, percent interest, good cause, aggrieved, prejudge,
ethical, bankruptcy proceeding, percent chance, dissolution,

Search - 100 Results - bad faith claim as asset of estate

shareholders, settle, lifted

### LexisNexis (TM)

### HEADNOTES - Core Concepts - Hide Concepts

Bankruptcy Law > Examiners & Trustees > Duties
*HN1* When a debtor has a trustee in bankruptcy, ⊾ the trustee has, with immaterial exceptions,
the exclusive right to represent the debtor in court, according to 11
U.S.C.S. § 323(a). More Like This Headnote

Bankruptcy Law > Practice & Proceedings > Appeals
*HN2* If a party is not aggrieved by an order, that party cannot
appeal from
it. More Like This Headnote

Bankruptcy Law > Practice & Proceedings > Adversary Proceedings Civil Procedure
> Joinder of Claims & Parties > Intervention
*HN3* Without a legally protectable interest, a party cannot establish good
cause to
intervene. More Like This Headnote

Bankruptcy Law > Creditor Claims & Objections > Types of Claims
Insurance Law > Bad Faith & Extracontractual Liability > Assignment of Claims
*HN4* Illinois allows the assignment to judgment creditors of claims against insurance companies for
refusing in bad faith to settle a claim within the policy
limits, without the insurance company's having to consent
to the assignment. More Like This Headnote

Bankruptcy Law > Automatic Stay
*HN5* Under Fed. R. Bankr. P. 9024, in the absence of extraordinary circumstances, there is no basis
for directing the bankruptcy court to revisit an order lifting an automatic
stay. More Like This Headnote

Bankruptcy Law > Practice & Proceedings > Professional Responsibility Insurance Law > General Liability Insurance >
Conflicts of Interest
*HN6* The insurer must, unless the insured consents, relinquish all control over the lawyer once insurer
and insured turn out to have antagonistic
interests. More Like This Headnote

**COUNSEL:** For PHOENIX INSURANCE COMPANY, Appellant (96-2036): William L. Berry, DUNHAM,
BOMAN & LESKERA, Belleville, IL USA. John L Bitzer, UNHAM, BOMAN & LESKERA, Collinsville, IL USA.

DONALD M. SAMSON, Trustee - Appellee (96-2036), Pro se, Belleville, IL USA.

For NEW ERA INCORPORATED, Debtor - Appellee (96-2036): Jeffrey S. Hebrank, David John Gerber,
BURROUGHS, HEPLER, BROOM, MACDONALD & HEBRANK, Edwardsville, IL USA.

For HOWARD HAMILTON, LAURA HAMILTON, MAGNA-FAB COMPANIES, INCORPORATED, Appellees
(96-2854): Steven N. Mottaz, THOMAS, MOTTAZ, EASTMAN & SHERWOOD, Alton, IL USA.

For NEW ERA INCORPORATED, Debtor - Appellant (96-2854): Jeffrey S. Hebrank, David John Gerber,

45

**OPINIONBY:** POSNER

**OPINION: [*1208]** Posner, *Chief Judge.* These bankruptcy appeals have a tangled history, an unbelievable present, **[**2]** and no future. The tale begins in 1987, when three buildings owned by the Hamiltons and rented by New Era, a company that recaps tires, burned down. New Era's insurer, Phoenix Insurance Company, had issued it a liability policy that had a limit of $ 1 million. In 1989, the Hamiltons sued New Era in an Illinois state court for damage to the buildings caused by the fire, for which they held New Era responsible. Phoenix took over the defense of the suit and hired a lawyer named Hebrank to handle it. In 1991, New Era declared bankruptcy, initially under Chapter 11; it was converted the next year to Chapter 7, and a trustee in bankruptcy, Samson, was appointed. The Hamiltons got the bankruptcy court to lift the automatic stay of suits against the debtor in order to permit them to continue their suit against New Era. They pointed out that New Era had insurance and to the extent that the insurance covered its liability other creditors would not be harmed. The order lifting the stay was not explicit, however, about whether the stay was being lifted only to the extent of the insurance coverage. If the Hamiltons got a judgment against New Era for more than $ 1 million, other creditors of New **[**3]** Era would be hurt because the corporation's net liabilities would be greater.

Which is what happened: in 1994 the Hamiltons obtained a judgment for $ 2.3 million against New Era. The following year, however, Samson negotiated a settlement in which the Hamiltons agreed not to seek satisfaction of any part of the judgment from New Era. In exchange, Samson assigned them New Era's claim that in failing to settle the Hamiltons' suit within the $ 1 million policy limit, Phoenix had breached its duty of good faith to its insured. (The duty is intended to prevent an insurance company from gambling with the insured's money. Suppose a suit against an insured has a 50 percent chance of failing and a 50 percent chance of yielding a judgment of $ 10 million for the plaintiff, and the policy limit is as in our case $ 1 million. The insurance company would have no incentive to settle the suit for more than $ 500,000--the expected cost to it of going to trial--but the insured, facing an expected cost of $ 4 million--the expected cost to it of going to trial (.5 x $ 10 million), minus the policy limit--would be desperate for the insurance company to offer the policy limit in settlement. And the plaintiff **[**4]** in the suit against the insured might accept, if less optimistic about the likely outcome of the suit.) As part of the assignment of the **bad-faith claim** against Phoenix, the Hamiltons agreed to remit to the debtor's **estate** 5 percent of any judgment they obtained against Phoenix.

Phoenix sought leave from the bankruptcy court to intervene to oppose the settlement. The bankruptcy judge turned Phoenix down, the district judge affirmed, and Phoenix has appealed. This is the first of the two appeals before us.

New Era had been dissolved by order of the Secretary of State of Illinois back in 1992. But under Illinois law, corporate dissolution does not eliminate any legal remedies that the corporation, its shareholders, or its directors may have that arose prior to the dissolution, provided the remedy is sought within five years after dissolution. 805 ILCS 5/12.80. In 1994, lawyer Hebrank--who, remember, had been hired by Phoenix to defend the Hamiltons' suit against New Era, and who was and is still being paid by Phoenix--filed a motion in the bankruptcy court, purportedly on behalf of New Era, to "enforce the automatic stay." By this he meant that he wanted the court to enjoin the Hamiltons **[**5]** from proceeding against Phoenix on the assigned claim. The court denied the motion, and the district court affirmed. Hebrank, still purportedly acting on behalf of New Era--though New Era is still in bankruptcy, and Samson, not Hebrank, is the trustee and Hebrank is not working for Samson--has appealed the district court's order to us. This is the second appeal. Hebrank and Phoenix have filed a single, joint brief in the two appeals, even though Phoenix has hired a different lawyer to represent it in its appeal and Hebrank maintains that he is working for New Era rather than for Phoenix. Samson, New Era's trustee in bankruptcy, has not been made a party either to Phoenix's appeal from the refusal to allow it to intervene or to Hebrank's

46

appeal, purportedly on [*1209] behalf of New Era, from the refusal to enforce the automatic stay.

The last link in the chain is the Hamiltons' suit against Phoenix on the assigned claim for bad faith, pursuant to the assignment. That suit was filed in 1997 in an Illinois state court and removed by Phoenix to federal district court (the same one to which orders in New Era's bankruptcy proceeding are appealed), where it is pending.

It is perfectly clear, and [**6] indeed sanctionably clear, that Hebrank has no right to appeal in New Era's name. *HN1*When a debtor has a trustee in bankruptcy, as the ghost of New Era does, the trustee has, with immaterial exceptions, *In re Perkins*, 902 F.2d 1254, 1258 (7th Cir. 1990); *In re Carbide Cutoff, Inc.*, 703 F.2d 259 (7th Cir. 1983); *Louisiana World Exposition v. Federal Ins. Co.*, 858 F.2d 233, 247 and n. 14 (5th Cir. 1988), the exclusive right to represent the debtor in court. 11 U.S.C. § 323(a); *Supporters to Oppose Pollution, Inc. v. Heritage Group*, 973 F.2d 1320, 1327 (7th Cir. 1992); *Fox Valley AMC/Jeep, Inc. v. AM Credit Corp.*, 836 F.2d 366 (7th Cir. 1988); *Detrick v. Panalpina, Inc.*, 108 F.3d 529, 535-36 (4th Cir. 1997); *In re Eisen*, 31 F.3d 1447, 1451 n. 2 (9th Cir. 1994). Of course the trustee can hire a lawyer to handle the corporation's cases, but Samson has not hired Hebrank. Hebrank had no right to appear in the bankruptcy court, or the district court, or this court, on behalf of New Era. So his appeal must be dismissed—and for the further and independent reason that New Era could not possibly benefit from the victory that Hebrank seeks, namely the enjoining of the [**7] Hamiltons from pursuing the assigned **bad-faith claim** against Phoenix. If that claim succeeds, New Era will obtain 5 percent of the proceeds. If it fails, as Hebrank wants (not surprisingly, considering who's paying him—Phoenix), New Era will obtain nothing. At argument, Hebrank expressed concern that the Hamiltons may try to recover the excess judgment from New Era. If so, this would be a concern of the trustee, not of Hebrank (our first point); it is not so, since the settlement agreement protects New Era against just such an eventuality. If New Era's creditors or shareholders are afraid the trustee won't protect their interests, their remedy is to seek his removal. 11 U.S.C. § 324(a); *In re Thompson*, 965 F.2d 1136, 1148 n. 15 (1st Cir. 1992); *In re JKJ Chevrolet, Inc.*, 26 F.3d 481, 485 (4th Cir. 1994).

The appeal being frivolous, indeed doubly frivolous, the Hamiltons may be entitled to an award of damages under Fed. R. App. P. 38. In addition, Hebrank may have engaged in unethical conduct, as it appears that he is being paid by one party (Phoenix) to take a dive on behalf of its opponent (New Era), for, to repeat, the only effect of obtaining a stay of the Hamiltons' [**8] suit against Phoenix, so far as New Era is concerned, would be to forfeit New Era's 5 percent interest in the successful prosecution of that suit. We do not wish to prejudge the ethical question, which is not addressed in the briefs. But we shall have to issue lawyer Hebrank a rule to show cause why he should not be ordered to pay damages under Rule 38 for filing a frivolous appeal and sanctioned under Fed. R. App. 46(c) for conduct unbecoming a member of the bar of this court.

We turn to Phoenix's appeal, which is also frivolous and also has a whiff of unethical conduct. Phoenix wishes to intervene in the bankruptcy proceeding under Bankr. R. 2018(a) (permissive intervention) in order to oppose the settlement between the Hamiltons and Samson whereby the latter assigned his debtor's **bad-faith claim** to the Hamiltons in return for a 5 percent interest in the claim. Were Phoenix allowed to intervene and succeeded in upending the settlement, the **bad-faith claim** would revert to New Era and so be prosecuted by Samson, the trustee, rather than by the Hamiltons. How that would make Phoenix better off is so unclear as to raise profound doubts about whether Phoenix can be said to be "aggrieved" [**9] by the order denying intervention. *HN2* If it was not aggrieved by the order, it cannot appeal from it. *In re Andreuccetti*, 975 F.2d 413, 416-17 (7th Cir. 1992); *Kane v. Johns-Manville Corp.*, 843 F.2d 636, 641-42 (2d Cir. 1988).

Another way to make the point is that Phoenix could not show good cause to intervene, as

the rule explicitly requires, Bankr. R. 2018(a); 9 *Collier on Bankruptcy* P 2018.04[3] (15th ed., Lawrence P. King ed. 1996), to oppose the settlement because it **[\*1210]** has no legally protectable interest in opposing it and [HN3]without such an interest it cannot establish good cause to intervene. *In re Addison Community Hospital Authority, 175 B.R. 646, 651 (Bankr. E.D. Mich. 1994.* The **bad-faith claim was an asset** of the insured, that is, of New Era, the debtor in bankruptcy. Had Samson not assigned it to the Hamiltons, it would have remained an **asset** of the debtor, and thus in Samson's control, and Samson rather than the Hamiltons would have brought suit against Phoenix.

Still another way to understand the utter futility of Phoenix's attempt to appeal is to observe that it is no business of Phoenix who owns the claim against it. [HN4] Illinois allows the assignment to judgment **[\*\*10]** creditors of claims against insurance companies for refusing in bad faith to settle a claim within the policy limits, without the insurance company's having to consent to the assignment. *Brocato v. Prairie State Farmers Ins. Ass'n,* 166 Ill. App. 3d 986, 520 N.E.2d 1200, 1202, 117 Ill. Dec. 849 (Ill. App. 1988); *Browning v. Heritage Ins. Co.,* 33 Ill. App. 3d 943, 338 N.E.2d 912, 916 (Ill. App. 1975); *Brown v. State Farm Mutual Automobile Ins. Ass'n,* 1 Ill. App. 3d 47, 272 N.E.2d 261, 264 (Ill. App. 1971). The reason given by Brown is that despite the element of bad faith, such a claim is more contractual than tortious in character, and contract claims, unlike tort claims, are traditionally assignable, subject to limitations not relevant to this case. *See, e.g., Collins Co. v. Carboline Co.,* 125 Ill. 2d 498, 532 N.E.2d 834, 839-40, 127 Ill. Dec. 5 (Ill. 1988); *Patrick Media Group, Inc. v. DuPage Water Comm'n,* 258 Ill. App. 3d 1068, 630 N.E.2d 958, 965, 196 Ill. Dec. 793 (Ill. App. 1994); *First Illinois National Bank v. Knapp,* 246 Ill. App. 3d 152, 615 N.E.2d 75, 78-79, 185 Ill. Dec. 780 (Ill. App. 1993). Phoenix thus has no right to block the assignment. The **[\*\*11]** only "interest" it has in it--and it is not the kind of interest that the law protects--is the possibility that Samson would press the claim against it less vigorously than the Hamiltons will. It's as if Phoenix were objecting to the Hamiltons' choice of lawyer to represent them in the suit, without any basis in law (such as a conflict of interest), merely because it thought the lawyer would be effective.

We add, as bearing further on the issue of frivolousness, that there is no basis whatsoever for Phoenix's and Hebrank's other arguments. One is that the settlement in which the Hamiltons acquired New Era's claim against Phoenix should be set aside because it has resulted in duplicative litigation, Phoenix having previously filed suit against the Hamiltons for a declaration that it was not liable under the policy it had issued to New Era. It is true that Phoenix's suit preceded the Hamiltons', but since the Hamiltons' suit has been removed by Phoenix into the same court in which its suit is pending, the cure for duplication is to consolidate the suits-- which should be done at once.

Hebrank asks us--nominally on behalf of New Era only, but really, it may be, on Phoenix's behalf, since, **[\*\*12]** as we mentioned earlier, the appellants have filed a joint brief, signed by Hebrank, rather than separate briefs, and Hebrank is being paid by Phoenix, not New Era--that we tell the bankruptcy court to lift the automatic stay only to the extent of New Era's insurance coverage, $ 1 million. The stay was lifted almost six years ago, and [HN5]in the absence of extraordinary circumstances not shown here there is no basis for directing the bankruptcy court to revisit that order. Bankr. R. 9024; see *Neuberg v. Michael Reese Hospital Foundation,* 123 F.3d 951 (7th Cir. 1997); *Rodriguez-Antuna v. Chase Manhattan Bank Corp.,* 871 F.2d 1, 3 (1st Cir. 1989); *In re Design Classics, Inc.,* 788 F.2d 1384, 1386 (8th Cir. 1986). Nor would Phoenix have had standing to submit even a timely opposition to the lifting of the stay, since the stay is for the protection of the debtor and its creditors, 3 *Collier on Bankruptcy, supra,* P 362.03, pp. 362-13 to 362-14, and Phoenix is neither.

Phoenix's further argument that the order lifting the automatic stay should be interpreted as limited to the insurance coverage is untimely and untenable. It is an inept as well as oblique way of attacking the settlement, **[\*\*13]** which the bankruptcy court approved, sensibly

49

enough, as being in the best interests of the bankrupt **estate**. See *Depoister v. Mary M. Holloway Foundation, 36 F.3d 582, 585-88 (7th Cir. 1994); In re Martin, 91 F.3d 389, 393 (3d Cir. 1996); In re Foster Mortgage* [*1211] *Corp., 68 F.3d 914, 917 (5th Cir. 1995).* The settlement eliminated a potential claim against the **estate** (the Hamiltons' $ 2.3 million judgment against New Era), in exchange for giving up an equivalent claim against Phoenix. It was not a straight swap, because the **estate** retained a piece of the claim against Phoenix. So the **estate** came out ahead.

Not only is Phoenix's appeal frivolous, just like Hebrank's; but, again like Hebrank, Phoenix or its attorneys appear to be skating on dangerously thin ice from an ethical standpoint. What is Phoenix doing hiring its opponent's lawyer to sell out the opponent? See *Wheeler v. Heckler, 787 F.2d 101, 104 n. 1 (3d Cir. 1986); People v. Rivers, 933 P.2d 6, 7 (Colo. 1997); In re Maternowski, 674 N.E.2d 1287, 1290-92 (Ind. 1996);* ABA Model Rule of Professional Conduct 1.8(f). Its retention of Hebrank began innocently enough, when the Hamiltons sued New Era, and Phoenix, [**14] as New Era's insurer, took over the defense and needed a local lawyer to handle the matter. But once New Era and Phoenix became antagonists, because of New Era's **bad-faith claim,** Phoenix could not continue to control the representation of New Era through the lawyer that it had hired. It is one thing for the insurer, pursuant to its duty to defend, to pick up the tab for the insured's lawyer; that is fine, *id.* at 1.7, comment 10; *Maryland Casualty Co. v. Peppers, 64 Ill. 2d 187, 355 N.E.2d 24, 30-31 (Ill. 1976); Illinois Municipal League Risk Management Ass'n v. Seibert, 223 Ill. App. 3d 864, 585 N.E.2d 1130, 166 Ill. Dec. 108 (Ill. App. 1992); Nandorf, Inc. v. CNA Ins. Cos., 134 Ill. App. 3d 134, 479 N.E.2d 988, 991-92, 88 Ill. Dec. 968 (Ill. App. 1985).* But as the cases we have just cited make clear, [HN6] the insurer must, unless the insured consents, relinquish all control over the lawyer once insurer and insured turn out to have antagonistic interests. The only person who could consent on New Era's behalf was Samson, who we believe (but again we do not wish to prejudge matters only imperfectly disclosed by the existing record) has not consented. So we shall issue to Phoenix [**15] a rule to show cause why it should not be sanctioned for filing a frivolous appeal and to Phoenix's counsel (other than Hebrank, recipient of his own rule to show cause) a rule to show cause why they should not be sanctioned for unethical conduct. New Era's appeal is dismissed, and the order that Phoenix has appealed from is affirmed.

Source: Legal > Area of Law - By Topic > Bankruptcy > Cases and Court Rules > **US Courts Bankruptcy Cases** Terms: **bad faith claim as asset of estate** (Edit Search)
        View: Full
Date/Time: Wednesday, June 9, 2004 - 9:40 AM EDT

* Signal Legend:
- Warning: Negative treatment is indicated

- Caution: Possible negative treatment

- Positive treatment is indicated

- Citing Refs. With Analysis Available

 - Citation information available

    * Click on any *Shepard*'s signal to *Shepardize*® that case.

Copyright © 2004 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

49

Source: Legal > Area of Law - By Topic > Bankruptcy > Cases and Court Rules > **US Courts Bankruptcy Cases** Terms: **bad faith claim as asset of estate** (Edit Search)

Select for FOCUS™ or Delivery

fed c g

*47 Fed. Appx. 178, \*; 2002 U. S. App. LEXIS 20698, \*\**

IN RE: ROBERT L. FONNER and SHARON L. FONNER, Debtors; ROBERT L. FONNER; SHARON
L. FONNER v. DAVID H. OVERDORF, Administrator Of The **Estate** of Kristen Overdorf,
Deceased; EDWARD J. BALZARINI, JR.; BALZARINI & WATSON; Sharon L. Fonner, Appellant

No. 01-4189

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

47 Fed. Appx. 178; 2002 U.S. App. LEXIS 20698

September 26, 2002, Submitted Under Third Circuit LAR 34.1(a) September 30, 2002, Filed

**NOTICE:** [\*\*1] RULES OF THE THIRD CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO
UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS
FOR THIS CIRCUIT.

**PRIOR HISTORY:** ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN
DISTRICT OF PENNSYLVANIA. D.C. Civil No. 01-cv-01278. District Judge: The Honorable Gary L.
Lancaster.

Fonner v. Overdorf (In re Fonner), 262 B.R. 350, 2001 Bankr. LEXIS 539 (Bankr. W.D. Pa. 2001).

**DISPOSITION:** Affirmed.

### CASE SUMMARY

**PROCEDURAL POSTURE:** Appellant debtor appealed from the United States District Court for
the Western District of Pennsylvania's order affirming an order of the bankruptcy court, reopening
her bankruptcy case and finding that she had assigned certain rights to appellee **estate.**

**OVERVIEW:** A significant portion of the debtor's argument on appeal, i.e. the portion that attacked
the propriety of a change in the law justifying Fed. R. Civ. P. 60(b)(6) relief, was inapposite. It was
clear from the bankruptcy court's opinion that the primary ground for its ruling was the extreme
hardship that would result to the **estate** absent a clarification of the discharge order. Refusing to
reopen the case and modify the discharge order would have worked an "extreme injustice" upon the
**estate** by inequitably depriving the **estate** of substantial damages. Any benefit of denying the
**estate's** motion would have only redounded to the insurance companies involved. Similarly
unavailing was the debtor's challenge to the bankruptcy court's finding that the modified discharge
order was an implicit assignment by her of her **bad faith claims** against her insurance
carriers to the **estate.** The bankruptcy court explicitly found that the parties' intent was to assign all
rights, and that this intent was reflected in the breadth of the language of the discharge order. The
court was well within its rights to make the finding that it did, and the court would not overturn it.

50

Search - 100 Results - bad faith claim as asset of estate **OUTCOME:**

The judgment of the district court was affirmed.

**CORE TERMS:** modified, assign, bankruptcy case, contravened, justifying, affirming, modification, carriers, abuse of discretion, state law, accomplish, reopening, hardship, assigned,

plenary, modify, timely appealed, insurers, reopen

### LexisNexis (TM) HEADNOTES - Core Concepts - Hide Concepts

Bankruptcy Law > Practice & Proceedings > Appeals
Civil Procedure > Appeals > Standards of Review > Standards Generally
*HN1* Because the district court sits as an appellate court in bankruptcy cases, a court of appeal's review of its decision is plenary. In turn, the court of appeals reviews the bankruptcy court's factual findings for clear error, and exercise plenary review over its conclusions of law. More Like This Headnote

Civil Procedure > Relief From Judgment > Mistake & Excusable Neglect Civil Procedure > Appeals > Standards of Review > Abuse of Discretion
*HN2* The grant or denial of motions under Fed. R. Civ. P. 60(b) (other than Fed. R. Civ. P. 60(b)(4)) may be reversed only for an abuse of discretion. More Like This Headnote

**COUNSEL:** For In Re: Sharon L. Fonner, Appellant: Paul H. Titus, Schnader, Harrison, Segal & Lewis, Pittsburgh, PA.

For DAVID H. OVERDORF, Edward J. Balzarini, Balzarini Watson, Appellees: Michael Balzarini, Balzarini & Watson, Pittsburgh, PA.

**JUDGES:** Before: BARRY, AMBRO, and GARTH, Circuit Judges.

**OPINIONBY:** Maryanne Trump Barry

**OPINION:**

[*179] BARRY, Circuit Judge

Sharon L. Fonner appeals from the District Court's October 9, 2001 order affirming the May 22, 2001 order of the Bankruptcy Court reopening her bankruptcy case and finding that she had assigned certain rights to appellee, the **Estate** of Kristen Overdorf **("Estate")**. *HN1*
  Because the District Court sits as an appellate court in bankruptcy cases, our review of its decision is plenary. Cinicola v. Scharffenberger, 248 F.3d 110, 115 n.1 (3d Cir. 2001). In turn, we review the Bankruptcy Court's factual [**2] findings for clear error, and exercise plenary review over its conclusions of law. In re: New Valley Corporation, 181 F.3d 517, 522 (3d Cir. 1999). The District Court had jurisdiction to review the Bankruptcy Court's order under 28 U.S.C. § 158(a). Our jurisdiction is proper pursuant to 28 U.S.C. § 1291. We will affirm.

I.

The facts surrounding this appeal are well known to the parties, and have been detailed extensively in the Memorandum Opinion of the Bankruptcy Court and in Overdorf v. Fonner, 2000 PA Super 39, 748 A.2d 682, 683-84 (Pa. Super. 2000), of which the Bankruptcy Court took judicial notice. We briefly review them here.

In April, 1991, Fonner was driving a car that struck and killed Kristen Overdorf, who was riding a

51

Tomsic Motor Company. The Fonners had personal automobile insurance coverage from Travelers Insurance Company, and excess coverage was available through Tomsic's insurers, Allstate Insurance Company and Motorists Mutual Insurance Company.

After some maneuvering by the insurance companies, Overdorf's administrator [**3] rejected an offer by Travelers and commenced an action in Pennsylvania state court against the Fonners, Tomsic Motors, and others. While this action was ongoing, the Fonners filed a voluntary chapter 7 bankruptcy petition in October, 1995, which stayed the action as to them. In none of the Fonner's chapter 7 filings, however, did reference to the Overdorfs or the lawsuit appear. Thus, the **Estate** was not then notified of the bankruptcy filing.

In December, 1995, the Fonners added the **Estate** to the list of creditors, and in January, 1996, the **Estate** entered an appearance and requested copies of all notices pertaining to the bankruptcy proceedings. On February 23, 1996, the Fonners were granted a general discharge [*180] and were released from all dischargeable debts. The bankruptcy case was closed on February 28, 1996.

The next day, the **Estate** moved to reopen the case to allow it to seek a modification of the discharge order, with an accompanying motion for modification. Ms. Fonner did not object and, according the Bankruptcy Court, "appeared amenable to the entry of any order which enabled her to receive a discharge while agreeing to any procedure which allowed Overdorf's **estate** to pursue [**4] applicable insurance coverage." A.10.

The Bankruptcy Court heard argument on the motion on April 1, 1996, and entered a modified consent order reopening the case. After Fonner moved to amend the relevant schedule to list the **Estate's** claim, the Bankruptcy Court entered an order on May 14, 1996 modifying the February discharge order, and the case was again closed on June 27, 1996.

The state court action against Fonner proceeded to trial, and resulted in a judgment against her and in favor of the **Estate** in the amount of $ 862,500. Delay damages were awarded by the trial court in the amount of $ 377,140.59. Interest was added, yielding a total judgment of $ 1,239,640.59, entered in July of 1999.

In late 2000, the **Estate** apparently contacted Fonner to request an assignment of her rights against the insurance companies. In February, 2001, Fonner refused. On February 23, 2001, in response to what she perceived as threats from the **Estate** to commence an action in another jurisdiction to seize Fonner's personal **assets** to satisfy the state court judgment, Fonner brought an emergency motion to reopen the bankruptcy case and enjoin the **Estate** from enforcing or collecting on the judgment. The [**5] **Estate** responded by moving to again modify the May, 1996 discharge order to clarify that Fonner had in fact assigned to the **Estate** the rights in question. The **Estate** argued that Fonner's refusal in 2001 to do so violated the modified discharge order. By order dated May 22, 2001, the Bankruptcy Court reopened the case, denied the injunction, and granted the **Estate** its requested relief under Fed. R. Civ. Proc. 60(b)(6).

 Fonner timely appealed that order to the District Court, which adopted the Bankruptcy Court's memorandum opinion and affirmed its May 22, 2001 order on October 9, 2001. Fonner timely appealed to this Court.

II.

 Fonner argues that the District Court erred in affirming the Bankruptcy Court's order granting the **Estate** relief under Rule 60(b)(6) and "compelling" the assignment [*181] of Fonner's **bad faith claims** against her insurance carriers to the **Estate.** Both arguments turn on the Bankruptcy Court's conclusion that the May 14, 1996 order was both (1) an assignment by Fonner to the **Estate** of any rights she had against Travelers and / or Motorists Mutual and

52

(2) an authorization by Fonner to the **Estate** to pursue legal proceedings against the insurance companies to enforce those **[\*\*6]** rights.

The **Estate** argues that this was a factual finding entitled to considerable deference and to be overturned only if clearly erroneous, citing John F. Harkins Co., Inc. v. Waldinger Corp., 796 F.2d 657 (3d Cir. 1986). Fonner argues that the Bankruptcy Court's decision to grant relief under Rule 60(b)(6) is reviewed for abuse of discretion. This is the correct standard. See Page v. Schweiker, 786 F.2d 150, 152 (3d Cir. 1986) *HN2*("The grant or denial of . . . motions under Rule 60(b) [other than (b)(4)]. . . may be reversed only for an abuse of discretion").

A.

Fonner argues, first, that relief under Rule 60(b)(6) was improperly granted because a "change in the law" or, in the alternative, what the Bankruptcy Court saw as the inequitable consequences for the **Estate** were not grounds justifying relief. Fonner suggests, with reference to the former, that the Court ruled as it did to avoid the impact of Brown v. Candelora, 708 A.2d 104 (Pa. Super. 1998), a state case decided after the initial modified discharge order but before the current litigation. The Bankruptcy Court, however, explicitly stated that Candelora was not a change in the law, **[\*\*7]** and that it was not the basis for its decision. Thus, a significant portion of Fonner's argument on appeal, i.e. that portion that attacks the propriety of a change in the law justifying Rule 60(b)(6) relief, is simply inapposite.

It is clear from the Bankruptcy Court's opinion that the primary ground for its ruling was the extreme hardship that would result to the **Estate** absent a clarification of the discharge order. Accordingly, much of the case law cited by both parties is unhelpful, as the cases focus on whether a change in the law is an extraordinary circumstance justifying relief under Rule 60(b)(6). See, e.g., Blue Diamond Coal Co. v. Trustees of the UMWA Combined Benefit Fund, 249 F.3d 519 (6th Cir.), cert. denied sub nom. Blue Diamond Coal Co. v. Barnhart, 534 U.S. 1054, 151 L. Ed. 2d 562, 122 S. Ct. 643 (2001); Cincinnati Ins. Co. v. Flanders Elec. Motor Svc., Inc., 131 F.3d 625, 630 (7th Cir. 1997); Wilson v. Fenton, 684 F.2d 249 (3d Cir. 1982). Moreover, these cases belie Fonner's assertion that economic harm can never justify relief: in Cincinnati Ins. Co., for instance, the Seventh Circuit found only that the district court did not **[\*\*8]** abuse its discretion in ruling that the party in question had not made the requisite "compelling showing of [sufficient] hardship and unfairness" to warrant 60(b)(6) relief. 131 F.3d at 630. Here, the Bankruptcy Court concluded that the **Estate** had made such a showing. It explicitly found that refusing to reopen the case and modify the discharge order would work an "extreme injustice" upon the **Estate** by inequitably depriving the **Estate** of substantial damages. Any benefit of denying the **Estate's** motion would only redound to the insurance companies involved; granting the relief, **[\*182]** it found, was "appropriate to accomplish justice." A.17 (quoting Klapprott v. United States, 335 U.S. 601, 615, 93 L. Ed. 266, 69 S. Ct. 384 (1949) (noting appropriate use of Rule 60(b)(6) to "accomplish justice")). The Court expressly rejected the "change in law" rationale, and expressly found the "extraordinary circumstances" necessary under Rule 60(b)(6). We cannot say that, in granting relief, the Court abused its discretion.

Similarly unavailing is Fonner's challenge to the Bankruptcy Court's finding that the modified discharge order was an implicit assignment by her of her **bad [\*\*9] faith claims** against her insurance carriers to the **Estate.** After extensive briefing and oral argument on the motion to amend the discharge order, the Bankruptcy Court explicitly found that the parties' intent was to assign all rights, and that this intent was reflected in the breadth of the language of the discharge order. The Court was well within its rights to make the finding that it did, and we will not overturn it.

B.

S3

Fonner also argues that the Bankruptcy Court contravened existing law (state and federal) in "compelling" her to assign her rights against the insurance companies to the **Estate** and that the District Court erred in affirming the Bankruptcy Court's May 22, 2001 order, with its factual finding that the intent of the parties to assign was reflected in the modified discharge order. It is that factual finding which, at bottom, we review and not any issue of state law or the effect of the finding on any state court much less whether state law was "contravened." Viewing the record as a whole, see Harkins Co., 796 F.2d at 562, we cannot say that that finding was clearly in error.

We also reject Fonner's argument that the May 22, 2001 order contravened federal **[**10]** law, i.e., the Bankruptcy Code itself, by "conditioning" the discharge of Fonner's liability on her assignment of her rights as against the insurance companies. The order does no such thing.

Fonner claims that the Bankruptcy Court "expressly held that its new discharge order constituted an assignment of Appellant's rights against the insurance carriers as quid pro quo for her discharge." Appellant's Opening Brief at 27 (first emphasis added). She then quotes the Bankruptcy Court's opinion:

> In return for receiving a discharge of her debt to Overdorf's **estate,** [Appellant] became obligated in the first modification to do whatever was required to enable [Appellee] to collect any favorable judgment from any applicable liability insurance, including assigning to [Appellee] any rights she may have against her insurers.

Id. (quoting A.18). But it is entirely clear, when viewed in context, that the Bankruptcy Court was saying something different from that which Fonner alleges. The Court was not holding that her discharge would be in exchange for any assignment, as is suggested by Fonner's discussion of the Court's "new discharge order." Rather, the Court was describing **[**11]** what the parties had intended to happen, and what had happened, upon that discharge.

We reject as well Fonner's contention that the Bankruptcy Court has compelled her to assign her rights against the insurance companies. It did not. Regardless **[*183]** of her intent at this point in time, the May 2001 order interprets the modified discharge order, expressing a finding of fact as to her intent then. The order interprets but does not "compel," and we do not find error.

III.

We will affirm the District Court's order of October 9, 2001. /s/

Maryanne Trump Barry

Circuit Judge

Source: Legal > Area of Law - By Topic > Bankruptcy > Cases and Court Rules > **US Courts Bankruptcy Cases** Terms:
bad faith claim as asset of estate (Edit Search)
View: Full
Date/Time: Wednesday, June 9, 2004 - 9:58 AM EDT

* Signal Legend:
- Warning: Negative treatment is indicated

54