From: Marc S. Alpert  To: m    Date: 9/21/2004  Time: 11:59:46 AM    Page 1 of 9
Case 1:04-cv-11074-DPW   Document 10-8   Filed 09/21/2004   Page 1 of 8
Get a Document - by Citation - 655 F.2d 786    Page 1 of 9

Service: **Get by LEXSEE®**
Citation: **655 F.2d 786**

*655 F.2d 786, \*; 1981 U.S. App. LEXIS 11040, \*\*;*
*32 U.C.C. Rep. Serv. (Callaghan) 1288; 8 Bankr. Ct. Dec. 231*

IN THE MATTER OF: LINTZ WEST SIDE LUMBER, INC., a/k/a WEST SIDE LUMBER, JOHN R. LINTZ, PRESIDENT, Bankrupt. APPEAL OF: THE FARMERS & MERCHANTS BANK OF FORT BRANCH, INDIANA.

No. 80-2710

UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

655 F.2d 786; 1981 U.S. App. LEXIS 11040; 32 U.C.C. Rep. Serv. (Callaghan) 1288; 8 Bankr. Ct. Dec. 231

April 28, 1981, ARGUED
July 28, 1981, DECIDED
July 28, 1981, Filed

**PRIOR HISTORY:** [\*\*1] Appeal from the United States District Court for the Southern District of Indiana. Evansville Division. No. EV 79-205-B--Gene E. Brooks, Judge.

**DISPOSITION:** Affirmed.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Appellant seeks review of an order entered in the United States District Court for the Southern District of Indiana, granting the petition of appellee to set aside an earlier order authorizing the abandonment of certain assets of the bankrupt.

**OVERVIEW:** Appellee petitioned to have a prior order of the bankruptcy court reversed regarding the authorization of abandonment of a parcel property. The trial court granted the petition and the appellant challenged. On review the appellate court found that the appellee had not appealed the decision of the court, and therefore the provisions of section 39(c) of the Bankruptcy Act, 11 U.S.C.S. § 67(C) (1978) did not apply to the reversal of the order. The court also found that the power of a bankruptcy judge to reverse his own previous order was well established. The court found that the appellant did not have a perfected security interest in the abandoned property. The court determined that the mistake in the original security interest was misleading and the appellee, as a hypothetical creditor, was prejudiced by the unperfected interest in the property. The court therefore affirmed the order.

**OUTCOME:** Order reversing the abandonment of property was affirmed because the security interest in the property was not perfected and the misleading financial statements of the appellant were considered to have prejudiced the appellee.

**CORE TERMS:** abandonment, bankrupt, financing statement, abandoned property, security interest, referee, prejudiced, innocent, reconsider, unduly, Bankruptcy Act, certain property, unfairly, secured creditor, irrevocable, revocation, abandoned, mortgage, petitioned, misleading, perfection, mislead, bankruptcy proceedings, business property, trade name, dischargeability, elementary, usurious, licensed, deprive

From: Marc S. Alpert To: m    Date: 9/21/2004 Time: 11:59:46 AM    Page 2 of 9
Case 1:04-cv-11074-DPW    Document 10-8    Filed 09/21/2004    Page 2 of 8
Get a Document - by Citation - 655 F.2d 786    Page 2 of 9

## LexisNexis(R) Headnotes ◆ Hide Headnotes

Bankruptcy Law > Practice & Proceedings > Appeals

**HN1** Section 39(c) of the Bankruptcy Act, 11 U.S.C.S. § 67(c)(1978), requires the aggrieved party to file a petition for review within 10 days of the entry of the order or within a judicially approved extension of that period. More Like This Headnote

Bankruptcy Law > Practice & Proceedings > Appeals

**HN2** It is now well settled that a bankruptcy judge has the power to reexamine and revise an order which he entered during the pendency of bankruptcy proceedings. More Like This Headnote

Bankruptcy Law > Estate Property > Abandonment

**HN3** Abandonment divests the trustee of his title to the property of the bankrupt. Since the trustee is not entitled to benefit from any subsequent unforeseen enhancement in the value of abandoned property, abandonment orders are ordinarily irrevocable. More Like This Headnote

Bankruptcy Law > Estate Property > Abandonment

**HN4** The absence of an explicit ban on reconsideration of abandonment orders in the Bankruptcy Rules and the availability of alternate relief tend to indicate that abandonment orders remain subject to the ancient and elementary power of the bankruptcy judge to reconsider his own orders. If a mistake has been made, it should be corrected, if the correction is not unfairly prejudicial to innocent parties. More Like This Headnote

Bankruptcy Law > Examiners & Trustees > Duties

**HN5** Section 70(c) of the Bankruptcy Act, 11 U.S.C.S. § 101 et. seq., clothes the trustee with the status of an ideal, imaginary creditor, irreproachable and without notice, and arms him with every conceivable right and power which under the applicable state law would be available to the most favored creditor who might have acquired a lien on the bankrupt's properties by legal or equitable proceedings. More Like This Headnote

**COUNSEL:** For Plaintiff: R. Stephen LaPlante, Evansville, IN.

For Defendant: David R. Joest, Bowers, Harrison & Kent, Evansville, Indiana.

**JUDGES:** Before CUMMINGS, * Chief Judge, CUDAHY, Circuit Judge, and WYATT, Senior District Judge. **

* At the time of the oral argument, Judge Cummings was a Circuit Judge but became Chief Judge on July 1, 1981, by designation of the Chief Justice of the United States.
** The Honorable Inzer B. Wyatt, Senior District Judge for the Southern District of New York, is sitting by designation.

**OPINIONBY:** CUDAHY

**OPINION:** [*788] CUDAHY, *Circuit Judge.* The Farmers & Merchants Bank of Fort Branch, Indiana seeks review of an order entered October 10, 1980, by the Honorable Gene E. Brooks, a United States District Judge, acting as a Judge of the Bankruptcy Court. This order granted the petition of J. Robert Duvall, trustee in bankruptcy for the estate of Lintz West Side Lumber, Inc., to set aside an earlier order entered by Judge Brooks, which authorized the abandonment of certain [**2] assets of the bankrupt. We affirm.

From: Marc S. Alpert To: m
Get a Document - by Citation - 655 F.2d 786
Date: 9/21/2004 Time: 11:59:46 AM
Page 4 of 9
Case 1:04-cv-11074-DPW    Document 10-8    Filed 09/21/2004    Page 3 of 8

court review of an order entered by a bankruptcy judge. HN1 Section 39(c) requires the aggrieved party to file a petition for review within 10 days of the entry of the order or within a judicially [*789] approved extension of that period. n2 Since more than three months elapsed between the entry of the abandonment order and the filing of the petition for review in the instant case, the Bank maintains that the petition is untimely and that the district court lacked the power to grant the relief requested.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n2 Section 39(c) of the Bankruptcy Act provides:

> A person aggrieved by an order of a referee may, within Ten (10) days after the entry thereof or within such extended time as the court upon petition filed in such Ten (10) day period may for cause shown, file with the referee a petition for review of such order by a Judge and serve a copy of such petition upon the adverse parties who were represented at the hearing. Such petition shall set forth the order complained and the alleged errors in respect thereto. Unless the aggrieved persons shall petition for review of such order within such Ten (10) day period, or any extension thereof, the order of the referee shall be final. Upon application of any party in interest, the execution or enforcement of the order complained of may be suspended by the Court upon such terms as will protect the rights of all parties in interest.

11 U.S.C. § 67(c) (1978).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [**5]

We believe that the Bank has misconstrued the nature of the review afforded by Section 39(c). This statute was intended to provide a mechanism for appealing the decisions of a bankruptcy judge to the district court. The facts of the instant case indicate, however, that the trustee's petition to set aside the July 18 abandonment order was not an attempt to initiate an appeal of that decision to the district court. The trustee did not have the authority to appeal an order which granted his own application, and Judge Brooks could not sit as a district judge on a case which he had decided as a bankruptcy judge. Thus, the provisions of Section 39(c) governing appeals from the bankruptcy court to the district court are inapplicable.

The case instead involves the bankruptcy judge's "ancient and elementary power to reconsider" his own orders. *In re Pottasch Bros. Inc.*, 79 F.2d 613, 616 (2d Cir. 1935). Long ago, Judge Learned Hand concluded that there was no reason why a referee's orders "should be as immutable as the Twelve Tables, once the ink is dry." *Id.* HN2 It is now well settled that a bankruptcy judge has the power to reexamine and revise an order which he entered during the [**6] pendency of bankruptcy proceedings. *In re Meter Maid Industries, Inc.*, 462 F.2d 436 (5th Cir. 1972); *Frasch v. Wilson*, 413 F.2d 69 (9th Cir. 1969). The fact that Judge Brooks set aside the order after his accession to the federal district bench is of no consequence in this particular circumstance. He still retained the power to exercise his discretion to reconsider his earlier order in light of the trustee's facts and arguments as to the status of the Bank's security interest. And in doing so, he did not abuse his discretion. n3

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n3 Any suggestion by the Bank that the 1960 amendment to Section 39(c) places a limitation on the power of the bankruptcy judge to reconsider his own orders is without merit. See *In re Meter Maid Industries, Inc.*, 462 F.2d 436, 439 (5th Cir. 1972); *In re Brendan Reilly Associates, Inc.*, 372 F.2d 235, 239 (2d Cir. 1967).

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

The Bank also argues that Judge Brooks lacked the power to set aside the July 18 abandonment order because the trustee had been divested of his title [**7] to property upon entry of the abandonment order and could not subsequently challenge the Bank's status as a secured creditor without asserting a new claim. We agree that HN3 abandonment divests the trustee of his title to the property of the bankrupt. *Brown v. O'Keefe*, 300 U.S. 598, 57 S. Ct. 543, 81 L. Ed. 827 (1937); *Fletcher v. Surprise*, 180 F.2d 669 (7th Cir. 1950). Since the trustee is not entitled to benefit from any subsequent unforeseen enhancement in the value of abandoned property, abandonment orders are ordinarily irrevocable. *In re Webb*, 54 F.2d 1065 (4th Cir. 1932); *In re Amm*, 130 F. Supp. 73 (E.D. Pa. 1955); *In re Yalden*, 109 F. Supp. 603 (D. Mass. 1953). See also *Brookhaven Bank & Trust Co. v. Gwin*, 253 F.2d 17 (5th Cir. 1958); *In re Gravure Paper & Board Corp.*, 234 F.2d 928 (3d Cir. 1953); *In re Polumbo*, 271 F. Supp. 640 [*790] (W.D. Va. 1967). Cf. *In re Roberts*, 460 F. Supp. 88 (N.D. Ga. 1978). n4 But most of these cases involved situations in which the revocation of an abandonment order would unduly prejudice the rights of the innocent owner following abandonment of the property. n5

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n4 *In Re Roberts*, 460 F. Supp. 88 (N.D. Ga. 1978), did not involve a direct attack on an order authorizing the abandonment of property and therefore is not apposite to the instant case. It is noteworthy, however, because the court found that the bankruptcy judge had jurisdiction to rule on the title to abandoned property. In *Roberts*, a creditor of the bankrupt filed a complaint in bankruptcy court to determine the dischargeability of a debt. The bankrupt argued that certain property in dispute had been abandoned by the trustee and as a result, the bankruptcy court lacked jurisdiction over the creditor's complaint. But the bankruptcy judge cancelled the recorded warranty deed on the abandoned property (to the bankrupt) and ruled that the creditor had the right to immediate possession of the property. On appeal, the district court concluded that the bankruptcy judge could not have reached the dischargeability issue without making a determination as to title and that cancellation of the instruments of title was necessary in order to enforce the findings of the bankruptcy judge. Thus, the abandonment order in *Roberts* was not irrevocable and failed to deprive the bankruptcy court of jurisdiction to determine the creditor's claim. [**8]

n5 Revocation of the abandonment order in *In Re Webb*, 54 F.2d 1065 (4th Cir. 1932), would have unduly prejudiced the bankrupt who became the innocent owner of the property upon abandonment. The bankrupt in *Webb* had secured his indebtedness to a mortgage company by a deed of trust on certain "business property" which was abandoned by the trustee. Following the entry of the abandonment order, the bankrupt filed suit in state court to prevent a foreclosure sale of the property on the grounds that the loans from the mortgage company were usurious. A creditor of the bankrupt petitioned the referee to reopen the case, set aside the abandonment order and direct the trustee to take charge of the "business property." The referee granted the creditor's petition, and the district court affirmed. The Court of Appeals for the Fourth Circuit reversed, however, on the ground that "it would be highly inequitable and unjust to deprive the bankrupt of the reward of his diligence and industry in prosecuting the litigation" when the trustee had some knowledge of the usurious

From: Marc S. Alpert To: m
Case 1:04-cv-11074-DPW   Document 10-8   Filed 09/21/2004   Page 5 of 8
Date: 9/21/2004 Time: 11:59:46 AM   Page 6 of 9
Get a Document - by Citation - 655 F.2d 786
Page 6 of 9

nature of the loans prior to the abandonment of the property. *Id.* at 1068.

*In Re Yalden*, 109 F. Supp. 603 (D. Mass. 1953), did not directly involve the revocation of an abandonment order, but focused instead on the irrevocable effect of abandonment. At a final meeting of the creditors of the bankrupt, the trustee of the Yalden estate orally informed the referee that he was disclaiming title to certain property which had no equity value to the estate. Title to the property thus reverted back to the bankrupt who made tax and mortgage payments on the property in reliance on the oral abandonment. Several years later, the bankrupt sought to remove the cloud on her title caused by the absence of a written abandonment order. The bankruptcy proceedings were reopened and a newly-appointed trustee obtained an order from the bankruptcy court confirming a private sale of the abandoned property to the bankrupt. A creditor of the bankrupt subsequently attempted to set aside this confirmation order in the belief that the abandoned property could thus become part of the bankrupt's estate and subject to claims by the creditor. The district court concluded, however, that the sale of the abandoned property in this case was a mere formality designed to obtain written confirmation of the bankrupt's title to the property and refused to set aside the order of the bankruptcy judge approving the sale. The creditor was not unfairly prejudiced by this result because he had not filed a claim in the original bankruptcy proceeding and failed to object to the sale after obtaining permission to file a claim in the reopened proceeding. Moreover, the bankrupt, as the innocent owner of the property following abandonment would have been unduly prejudiced by any holding which permitted the abandoned property to be reclaimed by the bankrupt's estate.

Similarly, in *In re Amm*, 130 F. Supp. 73 (E.D. Pa. 1955), the trustee abandoned certain property at a meeting of the creditors by informing the trustee that there was no equity in the property of any value to the bankrupt's estate. The trustee then agreed to convey the abandoned property to the bankrupt for $ 100 at a private sale. When the trustee subsequently received a $ 200 bid on the property, he petitioned for approval to sell the abandoned property to the $ 200 bidder. The bankruptcy judge granted the petition upon the mistaken assumption that the trustee still had title to the abandoned property. The district court vacated the judgment on the grounds that the property automatically and irrevocably reverted to the bankrupt upon abandonment. Implicit in this holding is the concept that revocation of the abandonment order would unduly prejudice the bankrupt as the innocent owner of the abandoned property.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - [**9]

In the instant case, however, the trustee is not attempting to reclaim abandoned property which has undergone an unanticipated [*791] increase in value or to unfairly prejudice the purported secured party and owner of the property following abandonment. The trustee is merely attempting to correct the erroneous distribution of property by abandonment to a creditor with a security interest which has subsequently been shown to be unperfected throughout. Under these circumstances, where there has been a mistake in the original abandonment and where the purported secured creditor has not been unfairly prejudiced, we do not believe that the bankruptcy judge is precluded from reconsidering the entry of such an order setting aside a prior abandonment order.

There is no indication in the Rules of Bankruptcy Procedure that abandonment orders should be treated differently than other orders by a bankruptcy judge which are subject to reexamination. Moreover, the provisions of Rule 60 of the Federal Rules of Civil Procedure are applicable to bankruptcy practice and would have provided a basis for setting aside the July 18 abandonment order even if the bankruptcy judge had been otherwise [**10] specifically prohibited from reconsidering such orders. n6 *See* R. Bankr. P. 924. *HN4* The absence of an explicit ban on reconsideration of abandonment orders in the Bankruptcy Rules and the availability of alternate relief tend to indicate that abandonment orders remain subject to the

From: Marc S. Alpert To: m  Date: 9/21/2004 Time: 11:59:46 AM  Page 7 of 9
Case 1:04-cv-11074-DPW   Document 10-8   Filed 09/21/2004   Page 6 of 8
Get a Document - by Citation - 655 F.2d 786   Page 7 of 9

"ancient and elementary power [of the bankruptcy judge] to reconsider" his own orders. *Pottasch Bros.*, 79 F.2d at 616. If a mistake has been made, it should be corrected, if the correction is not unfairly prejudicial to innocent parties.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n6 The Bank's claim that Rule 60(b) relief is not available in this case is not persuasive. Although both the trustee and the bankruptcy judge were aware of the Bank's alleged status as a secured creditor at the time the July 18 abandonment order was entered, there is no indication in the record that either of these individuals knew exactly what information appeared on the financing statement.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

III.

Finally, the Bank claims that the district court erred in concluding that the Bank's [**11] security interest was not perfected. The Bank argues that the Uniform Commercial Code's system of "notice filing" was designed to assure that minor errors in the information provided on the financing statement would not defeat the perfection of a security interest. Since the bankrupt here is a close corporation located in a small town, the bank contends that a filing under the name of John and Mayella Lintz, the principal owners, directors and officers of the corporation, was sufficient to provide notice of the Bank's security interest to other creditors in the community.

Judge Brooks concluded, however, that the Bank's failure to include the correct name of the debtor corporation in the financing statement was seriously misleading because subsequent creditors had to depend upon a government official to search state records for the financing statement. See Anderson, *Uniform Commercial Code*, § 9-402:28 (1971); Ind. Adm. Rules and Reg. §§ 26-1-9-407-1 to 9. As a duly constituted corporation, Lintz West Side Lumber, Inc., is a legal entity separate and distinct from John and Mayella Lintz (whose names appear on the financing statement). A creditor would ordinarily, and could [**12] reasonably, assume that *corporate* assets would not be encumbered by a security interest filed under the names of these individuals despite the similarity in the names. Unless a creditor requested a search for the security interests held by others in the Lintz' personal property, the Bank's security interest would not be found. Under these circumstances, we cannot say that the names of the debtors were sufficiently similar to provide a creditor or official searching the records on behalf of a creditor with reasonable notice of the Bank's security interest. n7

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n7 Both *In re Platt*, 257 F. Supp. 478 (E.D. Pa. 1966) and *In re Hatfield Construction Company*, 10 U.C.C. Rep. Serv. (Callaghan) 907 (M.D. Ga. 1971) are thus distinguishable from the instant case. In *Platt*, the court held that a financing statement filed under the name, Platt Fur Company, would not seriously mislead creditors of the true debtor, Henry Platt. Platt Fur Company, however, was an unregistered trade name for the business of Henry Platt and not a licensed corporate entity. In *Hatfield*, the financing statement securing assets of Hatfield Construction Company, a licensed corporation, was filed under the name of Wayne L. Hatfield. Although the court found that the financing statement was not seriously misleading, there is no indication that a government official was required to perform the search in that case. In addition, in both *Platt* and *Hatfield*, the court *affirmed* the determination of the bankruptcy judge.

From: Marc S. Alpert To: m  Date: 9/21/2004 Time: 11:59:46 AM  Page 8 of 9
Case 1:04-cv-11074-DPW   Document 10-8   Filed 09/21/2004   Page 7 of 8
Get a Document - by Citation - 655 F.2d 786  Page 8 of 9

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - [**13]

[*792] The Bank's argument that the security agreement was entered in good faith and without intent to defraud creditors does not alter this result. The bank's good faith is not at issue here. Moreover, good faith is only a necessary, not a sufficient, condition for perfection under the Uniform Commercial Code.

The Bank's allegation that no creditor in this case was actually mislead is similarly without merit. The district court noted that "Section HN5 70(c) of the Bankruptcy Act clothes the trustee with the 'status of an ideal, imaginary creditor, irreproachable and without notice, and arms him with every conceivable right and power which under the applicable state law would be available to the most favored creditor who might have acquired a lien on the bankrupt's properties by legal or equitable proceedings.' Collier Bankruptcy Manual, *Trustees and Receivers in Bankruptcy Handbook*, § 13.001; J. White and R. Summers, *Handbook of Law Under the Uniform Commercial Code*, § 24-3 page 867 (1972)." *In re Lintz West Side Lumber*, No. EV 79-205-B (Bankr. Ct. Oct. 10, 1980). The district judge, an expert in bankruptcy matters and presumably in the mechanics of perfection of [**14] security interests in personal property in Indiana, found that the trustee, as an ideal, hypothetical creditor of the bankrupt, can be considered to have been prejudiced by the Bank's seriously misleading financing statement. See *In Re Thrift Shoe*, 502 F.2d 1211 (9th Cir. 1974). n8 After reviewing the record in this case, we are not persuaded that this finding is clearly erroneous. The order granting the trustee's petition to set aside the July 18 abandonment order is therefore affirmed.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n8 We find no merit in the Bank's argument that *In re Thrift Shoe Co.*, 502 F.2d 1211 (9th Cir. 1974) is inapposite. The *Thrift Shoe* court held that a creditor's financing statement which failed to give the debtor's correct trade name was insufficient to perfect a security interest under California law despite the fact that no creditor was actually misled. *Thrift Shoe* is thus persuasive authority for that portion of our decision in this case.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Service: **Get by LEXSEE®**
Citation: **655 F.2d 786**
View: Full
Date/Time: Tuesday, September 21, 2004 - 11:49 AM EDT

* Signal Legend:
● - Warning: Negative treatment is indicated
⚠ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
Ⓐ - Citing Refs. With Analysis Available
ⓘ - Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.

About LexisNexis | Terms and Conditions

From: Marc S. Alpert To: m  Date: 9/21/2004 Time: 11:59:46 AM  Page 9 of 9
Case 1:04-cv-11074-DPW    Document 10-8    Filed 09/21/2004    Page 8 of 8
Get a Document - by Citation - 655 F.2d 786    Page 9 of 9

Copyright © 2004 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.